UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DAY and DIANE DAY,

                Plaintiffs,                        Case No. 1:07-cv-883

v                                        HON. JANET T. NEFF

MICHAEL VLIEHS and ROBERT
TRANSPORT, Ltee.,

                Defendants.
_____/

## **OPINION**

In July 2007, plaintiffs filed this negligence action against defendants in Berrien County, Michigan, Circuit Court.  Defendants removed the case to this Court based on the parties' diversity of citizenship.  *See* 28 U.S.C. § 1332.  Defendants filed the instant Motion for Summary Judgment in June 2008, and plaintiffs filed a response to defendants' motion in July 2008.  On August 25, 2008, this matter was transferred from the Honorable Richard Alan Enslen to the undersigned pursuant to Administrative Order No. 08-122.  This Court granted plaintiffs' motion for leave to supplement their response to include and reference an affidavit from one of David Day's treating physicians, Paula K. Kilmer-Ernst, M.D.

Having reviewed the parties' written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process.  *See* W.D. Mich. LCivR 7.2(d).  For the following reasons, the Court denies defendants' Motion for Summary Judgment.

**Background**

This case arises from an early morning collision on August 2, 2004 in Berrien County between the semi-tractor-trailer driven by plaintiff David Day and the semi-tractor-trailer driven by defendant Michael Vliehs in the course of his employment for defendant Robert Transport Ltee. Plaintiffs allege that defendant Vliehs, as a result of his excessive speed on the highway and other alleged acts and omissions of negligence, rear-ended Day's truck and caused Day severe personal injuries.  Compl. ¶¶ 8, 10.

Day, who was 41 years old at the time of the accident, testified that he assumed his body "went back" on impact because the back plate glass window "was almost completely out" and he had "a big knot on the back of [his] head" (Pl. Dep. 47).  Day testified that the trucks hit with such force that a torch was required to cut the steel bumpers free (Pl. Dep. 49).

Plaintiff David Day delineates his alleged injuries as including the following:  acute cervical strain/sprain, an occipital head injury, a C5-6 left disk herniation with radiculopathy, a C6-7 right disk herniation with radiculopathy, L3-4 and L4-5 posterior bulging discs, T1 vertebral body hemangioma, straightening of normal lordotic curvature resulting in cervical paraspinal muscle spasm, post-traumatic aggravation of degenerative condition in spine resulting in chronic pain, cervical and lumbar whiplash syndrome resulting in chronic pain, lumbago, and "other and further problems and conditions which may not have fully manifested themselves."  Compl. ¶ 14.  He alleges that the injuries constitute an objectively manifested impairment of an important body function that affects his general ability to lead his normal life activities.  *Id.* ¶ 15.  Plaintiff Diane Day alleges a derivative loss of consortium claim.[1]  *Id.* ¶ 18.

---

[1]  Accordingly, this Court's references to "plaintiff" in the singular refer to David Day.

Defendants argue that they are entitled to summary judgment of plaintiffs' complaint against them. Defendants concede that there is a factual dispute concerning the nature and extent of plaintiff David Day's injuries but argue that the dispute is immaterial to this Court's legal determination of whether Day has suffered a serious impairment of an important body function in accordance with MICH. COMP. LAWS § 500.3135(7).

Specifically, defendants argue that while David Day has been found totally disabled from working, his medical records and the couple's deposition testimony "tell a different story." Defendants emphasize that plaintiff returned to work for an entire year before being disabled from employment and that plaintiff indicated that he could have continued to work with his injuries had his employer made simple modifications to his truck. Defendants emphasize that plaintiff performs his daily activities without assistance and has also been able to engage in several physically demanding activities, such as driving a tractor, plowing snow from their driveway, taking long car trips, shingling his roof, and building a pole barn. Defendants emphasize that plaintiff's prognosis in July 2007 was considered "good with appropriate treatment" (Def. Exh. G). Defendants urge this Court to conclude that the totality of the circumstances indicate that plaintiff David Day's general ability to lead his normal life has not been affected by the injuries he suffered in the August 2, 2004 collision.

In response, plaintiffs argue that defendants, the moving parties, have failed to meet their burden under FED. R. CIV. P. 56 of demonstrating that there is no genuine issue of material fact. According to plaintiffs, defendants support their motion with factually misleading deposition excerpts and an assortment of miscellaneous documents and isolated medical records. Plaintiffs opine that as a consequence, defendants' motion overlooks the fact that four years after the collision,

3

David Day is totally disabled from work, has chronic back pain that limits him functionally, requires active medical treatment and multiple pain medications, and is emotionally disturbed and distant from his family.

## Motion Standard

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(b).  "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

In evaluating the evidence presented, a court must draw all inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587.

## Discussion

This Court must apply Michigan law in considering plaintiffs' state tort claim.  *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Belknap v. J.B. Hunt Transport, Inc.,* 273 Fed. Appx. 415, 417 (6th Cir. 2008).

4

A.  Michigan Law

Under Michigan's no-fault insurance act, MICH. COMP. LAWS § 500.3101 *et seq.,* a person remains subject to tort liability for non-economic loss caused by his ownership, maintenance, or use of a motor vehicle only if the injured person suffered (1) death, (2) serious impairment of body function, or (3) permanent serious disfigurement.  MICH. COMP. LAWS § 500.3135(1).  A "serious impairment of body function" means an "objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."  *Id.* § 500.3135(7).

In *Kreiner v. Fischer,* 683 N.W.2d 611, 625 (Mich. 2004), the Michigan Supreme Court set forth a "multi-step" process that a court must use for "determining whether a plaintiff who alleges 'serious impairment of bodily function' as a result of a motor vehicle accident meets the statutory threshold for third party tort recovery" under the no-fault act.

First, a court must determine that there is no factual dispute concerning the nature and extent of the person's injuries, MICH. COMP. LAWS § 500.3135(2)(a)(i); or, if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function, MICH. COMP. LAWS § 500.3135(2)(a)(ii).  *Kreiner,* 683 N.W.2d at 625.  If a court so concludes, then it may continue to the next step.  *Id.*  However, if a court determines that there are material factual disputes, then the court may not decide the issue as a matter of law.  *Id.*

Second, if a court can decide the issue as a matter of law, then it must next determine if an "important body function" of the plaintiff has been impaired.  *Kreiner,* 683 N.W.2d at 625.  It is insufficient if the impairment is of an unimportant body function.  *Id.*  Correspondingly, it is also insufficient if an important body function has been injured but not impaired.  *Id.*  If a court finds that an important body function has in fact been impaired, it must then determine if the impairment is

5

objectively manifested. *Id.* Subjective complaints that are not medically documented are insufficient. *Id.*

Last, if a court finds that an important body function has been impaired and that the impairment is objectively manifested, then it must determine if the impairment affects the plaintiff's general ability to lead his or her life. *Kreiner,* 683 N.W.2d at 626. In determining whether the course of the plaintiff's normal life has been affected, a court should engage in a multi-faceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life. *Id.* Once this is identified, the court must engage in an objective analysis regarding whether any difference between the plaintiff's pre- and post-accident lifestyle has actually affected the plaintiff's "general ability" to conduct the course of his life. *Id.* Merely "any effect" on the plaintiff's life is insufficient because a de minimis effect would not, as objectively viewed, affect the plaintiff's "general ability" to lead his life. *Id.*

## B. Application

Here, defendants concede in their motion that there is a factual dispute concerning the nature and extent of plaintiff David Day's injuries but assert that the dispute is immaterial to this Court's determination of whether Day has suffered a serious impairment of an important body function in accordance with MICH. COMP. LAWS § 500.3135(7) (Mot. ¶ 5). While there is disagreement between the parties about whether the August 2, 2004 collision caused plaintiff's injuries to his lumbar and cervical spines, there is no material dispute over the fact of the injuries themselves. Therefore, *Kreiner's* threshold requirement is met.

Nor do defendants challenge the existence of an objectively manifested impairment of an important body function, which is the second step from *Kreiner*. The Michigan Court of Appeals

6

has acknowledged that neck and back movement is considered an important body function. *Netter v. Bowman,* 725 N.W.2d 353, 363 (Mich. Ct. App. 2006).

At issue then is the third step from *Kreiner,* whether the impairment affects the plaintiff's general ability to lead his normal life. Determining whether a plaintiff is generally able to lead his or her normal life involves consideration of whether the course of the plaintiff's life has been affected; if "the course or trajectory of the plaintiff's normal life has not been affected, then the plaintiff's 'general ability' to lead his normal life has not been affected and he does not meet the 'serious impairment of body function' threshold." *Kreiner,* 683 N.W.2d at 625.

Although this determination is necessarily made on a case-by-case basis, the Michigan Supreme Court offered the following nonexhaustive list of objective factors for assistance in evaluating whether a plaintiff's "general ability" to conduct the course of his normal life has been affected: (a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery. *Kreiner, supra* at 626. The court emphasized that in order to determine whether one has suffered a "serious impairment of body function," the totality of the circumstances must be considered, and the ultimate question is whether the impairment "affects the person's general ability to conduct the course of his or her normal life." *Id.*

When viewed in the light most favorable to plaintiffs, the deposition testimony of David and Diane Day and the medical records of David Day's physicians are sufficient to create a question of fact for the jury as to whether Day's injuries have affected his general ability to lead his normal life.

Turning to the first factor, the nature and extent of plaintiff's impairment, while the medical records establish that plaintiff suffers from injuries to his lumbar and cervical spines, defendants

focus on plaintiff's continued employment following the collision, opining that his continued employment casts the impairment in a different light.

The record confirms that plaintiff's injuries did not prevent him from working for one year after the accident, but plaintiff testified that his continued employment caused him pain in his neck and back.  Plaintiff testified that not being able to work "made him mad" and that he "always wanted to be a truck driver" (Pl. Dep. 95-96).  He testified that the pain did not prevent him from being able to steer his truck or shovel dirt from the trailer but made the tasks more difficult (*Id.* 51-54, 61-65).

The Michigan Court of Appeals has cautioned against placing too much weight upon an individual's decision to return to work, opining that continued employment in the face of pain and discomfort may be a decision made because of a strong work ethic and pride or because of absolute economic necessity.  *McDanield v. Hemker,* 707 N.W.2d 211, 219 n.5 (Mich. Ct. App. 2005).

Here, while the company doctor permitted plaintiff's return to work on the day of the collision, plaintiff's return visit to the company doctor in December 2004 resulted in restrictions on his work and a prescription for pain medication (Pl. Exh. 4).  Similarly, an independent medical examiner opined that plaintiff's post-accident neck symptoms restricted him from overhead and heavy lifting (Df. Exh. C).  Hence, David Day's attempt at continued employment is offset by the opinions of his treating physicians, who eventually found him disabled from working at all.  The record supports plaintiffs' claim that the nature and extent of David Day's impairments cause him substantial and ongoing pain and limit his abilities.

The next two *Kreiner* factors – the type and length of treatment and the duration of the impairment – also support the conclusion that plaintiff's impairments have affected his general ability to lead his normal life.  Over the course of four years, plaintiff has undergone numerous

8

treatments for his injuries.  Plaintiff participated in physical therapy and was prescribed narcotic pain medication and epidural steroid injections.  Thereafter, Richard A. Dirrenberger, M.D., a neurosurgeon who diagnosed plaintiff with cervical spondylisis with myelopathy and cervical disc displacement, recommended spinal surgery (Pl. Exh 8; Pl. Dep. 77-78).  Another surgeon from whom plaintiff sought a second opinion concurred in the recommendation.  She explained that plaintiff had "significant whiplash syndrome in both his cervical and lumbar spine" as well as "significant cervical disc herniation" and that his "non-operative management" had been extensive (Pl. Exh. 9).

In June 2006, Dr. Dirrenberger performed the spinal surgery with the assistance of his associate, Bruce E. Dall, M.D. (Pl. Exh. 8).  The spinal surgery consisted of bilateral cervical decompression at two levels and fusion with instrumentation (*Id.*).  The surgery did not provide plaintiff with lasting improvement, and Drs. Dirrenberger and Dall were unable to recommend further surgical options for him (Pl. Exh. 10).  Plaintiff has since undergone additional lumbar injections for pain, aquatic therapy, and continuing medications for pain, anxiety and depression (Pl. Exh. 11).

The last two *Kreiner* factors are the extent of any residual impairment and the prognosis for eventual recovery.  While plaintiff attempts to engage in some of his normal activities at home, he testified that these activities cause him pain and that he has learned that he should not continue to attempt some of them (Pl. Dep. 83-90).

Further, as previously noted, plaintiff is totally disabled from working.  Dr. Dirrenberger made the decision in August 2005 to place plaintiff on disability (Pl. Exh 8; Pl. Dep. 77-78).  On December 12, 2007, Dr. Dall placed plaintiff on "total disability until further notice" (Pl. Exh. 10).

9

Dr. Kilmer-Ernst, who has been treating plaintiff since January 2005, examined plaintiff again on June 3, 2008.  In her affidavit signed July 25, 2008, Dr. Kilmer-Ernst attests that plaintiff continues to suffer from neck pain, back pain, and occasional burning pain in his arms and agrees with his neurosurgeons that he is "permanently disabled from returning to his job as a truck driver" (Aff. ¶ 6).  Indeed, Dr. Kilmer-Ernst opines that plaintiff has reached his "maximum medical improvement" (*Id.*).

Hence, there is evidence under the final two *Kreiner* factors supporting the conclusion that plaintiff's impairments have affected his general ability to lead his normal life.

Given the totality of the circumstances, the Court finds that issues of material fact remain as to whether plaintiff has suffered a "serious impairment of body function" that would permit recovery under the no-fault act.  Accordingly, defendants are not entitled to summary judgment.

### C.  Conclusion

For the foregoing reasons, this Court DENIES defendants' Motion for Summary Judgment. An Order will be entered consistent with this Opinion.


DATED: November 12 , 2008                       /s/ Janet T. Neff
                                                JANET T. NEFF
                                                United States District Judge